UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BEFE REID,

                                                Plaintiff,

   vs.

                                                        9:05-CV-6

NEW YORK STATE DEP'T OF                 (J. Kahn)
CORRECTIONAL SERVICES, et al.,

                                              Defendants.
_____

BEFE REID
Plaintiff pro se
DAVID FRUCHTER
Asst. Attorney General for Defendants

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this amended civil rights complaint, plaintiff alleges that due to the actions of defendant Keefe, plaintiff was not able to participate in a mandated sex offender program, and as a result, plaintiff lost a substantial amount of good time. (Dkt. No. 8). Plaintiff seeks monetary and injunctive relief.

Presently before the court is defendants' second motion for summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 64). Plaintiff has responded in opposition to the motion. (Dkt. No. 66). For the following reasons, this court agrees with defendants and will recommend dismissing the action in its entirety.

**DISCUSSION**

1. **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. *See also Burt Rigid Box v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)(citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987)(citation omitted).

2. **Facts and Procedural History**

A review of the facts and the procedural history of this case is important for clarity. In the amended complaint, plaintiff alleges that in August of 2001, while he was incarcerated at the Fishkill Correctional Facility, he was given a misbehavior report for violating three different DOCS Rules: 106.10 (violating a direct order);

107.10 (interference); and 101.10 (a "sexual offense"). Plaintiff states that the sexual offense involved plaintiff placing his hand in a "male private part" area. Amended Complaint (AC) ¶ 6 (Dkt. No. 8). Plaintiff was found guilty of the interference charge as well as the "sexual offense" charge. AC at ¶ 7. Plaintiff received a penalty of 90 days keeplock, a loss of privileges, and a loss of three months of good time. *Id.* In addition, plaintiff states that he was forbidden to have contact with female personnel. *Id.*

Plaintiff appealed this determination, but the finding was affirmed at all administrative levels. AC ¶ 8. Prior to his final administrative appeal, plaintiff alleges that he was transferred to Gouverneur Correctional Facility. *Id.* Plaintiff states that he was told by a corrections counselor at Gouverneur that because of the "sexual offense" misbehavior, plaintiff would be required to participate in the "Sexual Offender Program (SOP)." *Id.*

On October 22, 2001, plaintiff was transferred to Auburn Correctional Facility and filed an Article 78 proceeding in New York State court, challenging the August 2001 disciplinary determination. AC ¶ 9. Plaintiff alleges that although the Article 78 proceeding was dismissed because of untimeliness, plaintiff moved for, and was granted re-argument. The petition was ultimately dismissed, but plaintiff states that he filed an appeal. Plaintiff states that in November of 2002, he was transferred to Comstock Correctional Facility, where he was interviewed for the SOP. However, plaintiff states that he was never placed into the program, and he wrote a letter to a corrections counselor stating that plaintiff believed that he was not being placed in the

3

program due to the pending appeal of the Article 78 proceeding. AC at ¶ 10.

Plaintiff states that he filed a grievance on March 25, 2003 regarding the failure to place him into the SOP, and that on April 16, 2003, the grievance was denied, stating that plaintiff had been notified of the SOP and had signed an acknowledgment of the SOP. *Id.* The notice further stated that plaintiff was required to complete the SOP prior to release. *Id.* Plaintiff states that two months later, he was transferred to Franklin Correctional Facility, but that Franklin did not offer the SOP. Plaintiff claims that at Franklin, he was interviewed by defendant Keefe, who told plaintiff that he was required to complete the SOP and that again, plaintiff signed an acknowledgment of this information. AC at ¶ 11.

Plaintiff claims that defendant Keefe made a false entry in plaintiff's guidance file, stating that plaintiff ***refused*** the SOP. *Id.* Plaintiff states that he obtained the "Guidance Quarterlies" from the other facilities in which he was incarcerated, but that these documents showed that plaintiff was on the "waiting list" for the SOP. Plaintiff then quotes the allegedly "false" entry. The paragraph quoted by plaintiff states that the plaintiff "acknowledged his need for the sex offender program and indicated his willingness to attend and participate." *Id.* The next portion of the quote states that "[h]owever, the inmate does not admit guilt stating that he is appealing under Article 78." Finally, the quote ends by stating that plaintiff was "advised this would be the same as a refusal of the program and [sic] could face 5 years potential loss of good time from time allowance committee." *Id.*

Plaintiff claims that defendant Keefe has abused his authority by stating that

4

plaintiff's Article 78 proceeding is deemed a "refusal" to participate in the SOP. Plaintiff claims that he has been denied the opportunity to participate in the SOP because of defendant Keefe, and that defendants "retaliated" against plaintiff for exercising his right to appeal the disciplinary determination.  Plaintiff also alleges that defendant Keefe made racial threats and comments and verbally harassed plaintiff. AC ¶ 17.  Plaintiff claims that defendant Keefe prevented plaintiff from being transferred to a facility in which the SOP was available. *Id.*

Finally, plaintiff claims that defendant Keefe conspired with the other defendants to prevent plaintiff from completing the required program which ultimately led to the Time Allowance Committee's denial of four years of good time. Complaint ¶ 23.  Plaintiff claims that the conspiracy was "racially motivated." *Id.*  In addition to seeking monetary damages, plaintiff requests that the court order defendant Goord to allow plaintiff to appear before another Time Allowance Committee so that plaintiff's good time may be reinstated. Complaint ¶ 24.

In September of 2005, plaintiff moved for summary judgment. (Dkt. No. 21). At the time plaintiff filed his motion, only defendant Goord had been served with process.  Defendant Goord opposed plaintiff's motion for summary judgment and cross-moved for summary judgment. (Dkt. No. 35).  On May 2, 2006, this court recommended that plaintiff's motion be denied, and that defendant Goord's motion be granted to the extent that plaintiff's request for damages against defendant Goord be dismissed and plaintiff's request for restoration of good time be dismissed. (Dkt. No. 49).  On September 26, 2006, the Honorable Lawrence E. Kahn approved and adopted

5

the recommendation in its entirety. (Dkt. No. 55).

Defendants Michael Keefe and the Department of Correctional Services (DOCS) were ultimately served with process and answered the amended complaint. All defendants now move for summary judgment as to any and all claims that were not dismissed by Judge Kahn's September 26, 2006 decision. (Dkt. No. 64).

The remaining claims are against defendant Keefe for damages, any claim for injunctive relief asking for a new hearing before the Time Allowance Committee,[1] and claims against the Department of Correctional Services (DOCS) because DOCS had not been served at the time of the previous dispostive motions.

## 3.     **Michael Keefe**

### A.  Verbal Harassment

Michael Keefe was the plaintiff's Corrections Counselor while plaintiff was at Franklin Correctional Facility. In addition to plaintiff's claim that defendant Keefe placed incorrect information in plaintiff's inmate records, plaintiff also claims that defendant Keefe called plaintiff a "Black Indian Bastard, and that he told plaintiff to "drop" his Article 78 proceeding. AC ¶¶ 14, 17.

It is well-settled that verbal harassment itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to

---

[1] The court notes that defendant Goord has retired from DOCS. As the result of Judge Kahn's decision, defendant Goord was kept in this case in his official capacity for purposes of injunctive relief only. Defendants correctly state that pursuant to FED. R. CIV. P. 25(d), the current Commissioner, Brian Fischer, is automatically substituted as a party in place of defendant Goord as to claims in defendant Goord's official capacity. Thus, defendant Goord is no longer a defendant in this action.

6

rise to the level of constitutional violations. *See Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) (threats or verbal harassment without injury, "although indefensible and unprofessional," do not rise to the level of constitutional violations).

In this case, defendant Keefe maintains that he never made such statements to the plaintiff,[2] however, even if these statements had been made, plaintiff's claim of verbal harassment and threats would have to be dismissed.

### B. Retaliation

Any action taken by a defendant in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). The law is well-settled that an inmate has no right to be free from false accusations or false misbehavior reports, unless they are made in retaliation for the exercise of a constitutional right. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)(citing *Franco*, 854 F.2d at 588-90).

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). The court must keep in mind that claims of retaliation

---

[2] Keefe Aff. ¶ 9 (Dkt. No. 64-4).

are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id*. (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema*, *N.A*., 534 U.S. 506 (2002)).

In this case, plaintiff states that in 2003, defendant Keefe placed incorrect information into plaintiff's prison file that would prevent plaintiff from participating in the SOP, resulting in a substantial loss of good time. Plaintiff claims that his file contained the incorrect notation that he "refused" to accept the SOP. Plaintiff also claims that this action by defendant Keefe was in retaliation for plaintiff filing an Article 78 proceeding, challenging the disciplinary disposition. Clearly, plaintiff's resort to the state court for a challenge to his disciplinary determination is protected activity. Thus, plaintiff meets the first requirement for a retaliation claim. However, plaintiff cannot meet the other requirements.

It is odd that plaintiff blames this "incorrect" information on defendant Keefe. In the amended complaint itself, plaintiff alleges that the initial disciplinary hearing that resulted in the imposition of the SOP requirement occurred in Fishkill Correctional Facility. AC ¶ 6. Plaintiff was found guilty, and appealed the result administratively. AC ¶ 8. While awaiting the decision on his administrative appeal, plaintiff was transferred to Gouverneur Correctional Facility and was told that an SOP was "imposed" as a result of the disciplinary hearing. *Id.*

Plaintiff was transferred to Auburn Correctional Facility in October of 2001. AC ¶ 9. Plaintiff claims that he filed his Article 78 proceeding in New York State Court while he was incarcerated at Auburn. *Id.* Plaintiff was clearly challenging his

8

guilt of the misbehavior. If plaintiff's Article 78 proceeding had been granted, the requirement of the SOP would most likely have been removed. Although plaintiff's Article 78 proceeding was dismissed, plaintiff moved for, and was granted reargument. *Id.* Plaintiff states that the petition was subsequently dismissed, but he filed another appeal. *Id.*

Plaintiff was then transferred to "Comstock"[3] Correctional Facility in November of 2002. Plaintiff states that Great Meadow Facility has an SOP. AC ¶ 10. These programs are apparently not available at every facility. At Great Meadow, plaintiff's counselor was Mr. Richard Celmer. Plaintiff states that Counselor Celmer told plaintiff that he was eligible for the SOP. Plaintiff also states that he told Counselor Celmer that he "believed that he is not being placed in the SOP . . . because of his pending appel [sic] of the Teir [sic] III Disciplinary Hearing . . . ." AC ¶ 10. Plaintiff claims that Counselor Celmer never responded to plaintiff's letter. *Id.*

In an "Inmate Review Worksheet," dated December 3, 2002 to March 3, 2003, Counselor Celmer stated that plaintiff was doing "well," had no major problems and was "currently appealing ***his need to be in the sex offender program***." Def. Ex. F (emphasis added). As a result of this review, Counselor Celmer concluded that plaintiff met the criteria for "reduced security," and thus, recommended transfer to a "medium"[4] security facility. *Id.* at p.3. Counselor Celmer again stated that plaintiff

---

[3] "Comstock" Correctional Facility is actually "Great Meadow" Correctional Facility, that is located in Comstock, New York. The court will refer to "Comstock" as Great Meadow.

[4] Great Meadow is a maximum security facility.

9

was appealing "*the need*" to participate in the SOP. *Id.*

Plaintiff was then transferred to Franklin Correctional Facility, a medium security facility. Although the security level was lower, Franklin did *not* have an SOP. Since Franklin does not have an SOP, the corrections personnel at Great Meadow knew that plaintiff would not be able to participate in an SOP if transferred to Franklin. The documents support this finding. Plaintiff filed a grievance on November 12, 2004, complaining about defendant Keefe, however, the Superintendent's decision states that plaintiff "was transferred from Great Meadow to Franklin in June 2003 because he was appealing his need for sex offender treatment and therefore no longer met the criteria for the program." Def. Ex. G at p.2.

Defendant Keefe did not "deprive" plaintiff of his ability to participate in the program. Plaintiff was deemed ineligible to participate in the program when he was at Great Meadow Correctional Facility. It is true that the ineligibility for the program, initially stemmed from his "appeal." However, this is logical because plaintiff was appealing *his need* to be in the program. If plaintiff's appeal had succeeded, he would no longer have been required to participate in the program. Thus, defendants' failure to place plaintiff in the SOP while his appeal was pending was not retaliation for filing an appeal, it was a practical solution in case the disciplinary determination was overturned. Plaintiff was transferred to a *lower* security facility when he became ineligible for the program due to the appeal.

Plaintiff insisted then, as he insists now, that he was not guilty of the misbehavior that resulted in the imposition of the SOP requirement. On January 29,

2005,[5] plaintiff was quite clear in a letter to defendant Keefe that he was angry because defendant Keefe placed a "refusal" on plaintiff's file. Keefe Aff. Ex. A at 2. It appears from the letter that plaintiff was being offered the program, but that plaintiff was refusing the program. *Id.* Plaintiff stated in his letter that he had always denied that he was guilty of the misbehavior, and that he did not "want the Program eny [sic] more" and that he was not "going to take a program for something I am not guilty of." Keefe Aff. Ex. A at 2.

There is ***no evidence*** that defendant Keefe placed the "refusal" on plaintiff's record "in retaliation" for plaintiff's appeal. Plaintiff cannot survive summary judgment if the defendant can show that he would have taken the same action "even in the absence of the protected conduct." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Regardless of plaintiff's "appeal," his failure to admit guilt would have prevented him from participating in the program. Plaintiff does not challenge the policy requiring the admission of guilt, he challenges defendant Keefe's interpretation of "refusal." Plaintiff clearly did not admit guilt, nor apparently would he have admitted guilt of the underlying misbehavior, first because of his pending appeal, and then because he simply did not believe that he committed the misbehavior of which he was found guilty. Plaintiff claims, however, that this failure to admit guilt should not be equated with a refusal to take the SOP, resulting in a denial of good time credits by the Time Allowance Committee.

---

[5] The Appellate Division, Third Department denied plaintiff's appeal on January 27, 2005. *Reid v. Goord*, 14 A.D.2d 950, 787 N.Y.S.2d 917 (3d Dep't 2005).

The court would point out that if the admission of responsibility for the conduct is a requisite for the program, then a refusal to accept responsibility is tantamount to a refusal to accept the program.  Defendant Keefe affirms that this was his understanding of the program.[6]  Keefe Aff. ¶ 6.  Ultimately, plaintiff was allowed to take the program at Gowanda Correctional Facility. Def. Ex. I.  He was admitted to the program on November 13, 2006, however, on November 17, 2006, plaintiff was removed from the program because of his belligerent behavior, his refusal to accept "feedback," and his failure to consider himself a sex offender. *Id.*  The counselor stated that plaintiff was a "poor candidate for treatment at this time." *Id.* at p.3.  The fact that plaintiff was removed from the SOP for failure to accept responsibility for his conduct and for other belligerent actions shows that defendant Keefe's understanding of the program was correct.[7]  There is no basis for plaintiff's claim of retaliation, and

---

[6] Defendant Keefe states that on various occasions, he spoke with plaintiff who, while agreeing to participate in a program, "firmly insisted that he had not committed the sexual misconduct of which he was found guilty at his August 7, 2001 Tier III hearing . . . ." Keefe Aff. ¶ 6.

[7] The court notes that plaintiff is not making any constitutional claims other than the retaliation claim against any of the defendants.  In *Johnson v. Baker*, 108 F.3d 10 (2d Cir. 1997), the court held that admission of the facts of the sexual offense of which an individual was convicted as a prerequisite to participating in the Family Reunion Program did not violate a plaintiff's Fifth Amendment rights or his right to Equal Protection.  In *McKune v. Lile*, 536 U.S. 24 (2001), the Supreme Court held that a sex offender program requiring that the inmate complete an "Admission of Responsibility" form did not violate the inmate's Fifth Amendment rights.  The court stated that acceptance of responsibility furthers a legitimate objective of the program. *Id.* at 36.  These cases have been distinguished in situations where the inmate would, as plaintiff did in this case, lose good time credits. *See Fifield v. Eaton*, 07-CV-6521, 2007 U.S. Dist. LEXIS 87056 at *4 (W.D.N.Y. Nov. 21, 2007)(citing *inter alia McKune*, 536 U.S. at 38).  However, the cases distinguishing *McKune* dealt with incidents in which the inmate was being required to admit to conduct of which he was not convicted.  Plaintiff in this case was not being required to accept responsibility for anything of which he was not found guilty at the disciplinary hearing.  Additionally, it is clear that he appeared before a Time Allowance Committee at which

12

this claim may be dismissed.

### C. Conspiracy

In order to prove a section 1983 conspiracy, a plaintiff must show an agreement between two or more state actors, to act in concert to inflict a constitutional injury, and an overt act done in furtherance of that goal, causing injury to plaintiff. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Conclusory allegations of conspiracy, however, are insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

Plaintiff in this case simply states that defendant Keefe "conspired" to keep plaintiff from participating in the SOP. There is absolutely no basis for plaintiff's claim of conspiracy, and any such claim may be dismissed.

### 4. **Commissioner Fischer[8] and DOCS**

Because this court has found that plaintiff's constitutional retaliation claim may be dismissed, this action may be also dismissed as against defendants Commissioner of DOCS and DOCS. These defendants were maintained after Judge Kahn's prior decision for purposes of injunctive relief only.[9]

---

he was able to argue that his good time credits should not be forfeited.

[8] As stated above, the current Commissioner, Brian Fischer, replaced defendant Goord in his official capacity. *See supra* n.1.

[9] This court found in its previous decision that defendant Goord had no personal involvement for purposes of the assessment of any damages in his individual capacity. (Dkt. No. 49 at 6-8). Clearly DOCS as a state entity would be immune from damages based on the Eleventh Amendment. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995)(citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)); *Yorktown Medical Laboratory v. Perales*, 984 F.2d 84, 87 (2d Cir. 1991). Thus, the only question in this action was whether these two defendants would be able to afford plaintiff injunctive relief.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion for summary judgment (Dkt. No. 64) be **GRANTED** and the amended complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: August 5, 2008

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge